Nicholas Ranallo, Attorney at Law
SBN 275016
371 Dogwood Way
Boulder Creek, CA 95006
Phone: (831) 703 -4011
Fax:     (831) 533 – 5073
nick@ranallolawoffice.com

Attorney for Defendant John Botson

# UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| AF HOLDINGS, LLC | Case No.: 5:12-cv-02048-EJD |
| Plaintiff, | DEFENDANT BOTSON'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT |
| vs. | |
| JOHN DOE & JOHN BOTSON | |
| Defendant | Date: September 28, 2012 |
| | Time: 9:00 A.M. |

## DEFENDANT BOTSON'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND FOR A MORE DEFINITE STATEMENT

PLEASE TAKE NOTICE that on September 28, 2012 at 9:00 a.m. Defendant John Botson, by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12 and other governing law, shall appear before the Honorable Edward J. Davila at the San Jose Courthouse, Courtroom 4 – 5th Floor located at 280 South 1st Street, San Jose, CA 95113, and will present its Motion to Dismiss Plaintiff AF Holdings First Amended Complaint.

For the reasons more fully described below, Defendant Botson seeks dismissal of Plaintiff's complaint for failure to state a claim under Rule 12(b)(6), and seeks a more definitive statement regarding Plaintiff's allegations of contributory infringement under Rule 12(e).

//

//

Nicholas Ranallo, Attorney at Law
SBN 275016
371 Dogwood Way
Boulder Creek, CA 95006
Phone: (831) 703 -4011
Fax:    (831) 533 – 5073
nick@ranallolawoffice.com

Attorney for Defendant John Botson

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| AF HOLDINGS, LLC | ) Case No.: 5:12-cv-02048-EJD |
| | ) |
| Plaintiff, | ) DEFENDANT BOTSON'S |
| | ) MEMORANDUM OF POINTS AND |
| vs. | ) AUTHORITIES IN SUPPORT OF MOTION |
| | ) TO DISMISS/FOR MORE DEFINITE |
| | ) STATEMENT |
| JOHN DOE & JOHN BOTSON | ) |
| | ) Date: September 28, 2012 |
| Defendant | ) Time: 9:00 A.M. |

## TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION**………………………………………….....................……1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**………………………………………………….........…….........……….3

**II.   FACTUAL BACKGROUND**…………………………………………….........……………..5

**III.   STATEMENT OF ISSUES**…………………………………………..............………………6

**IV.   LEGAL ARGUMENT**

A.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF

 MAY BE GRANTED………………………………………………….................................................6

1.   Plaintiff's Negligence Claim is Preempted and Should Be Dismissed For Failure to State a Claim.................................................................................................................7

   a.   Plaintiff's Claim is Within the Subject Matter of Copyright...............................................8
   b.   Plaintiff Seeks to Protect Rights That are Identical to the §106 Exclusive Rights.............9
   c.   Plaintiff's Claims are Preempted by the Doctrines of Conflict and Field Preemption.....12

2.   Plaintiff's Negligence Claim is Barred by CDA §230 Immunity and Should Be Dismissed for Failure to State a Claim.....................................................................................13

3.   Plaintiff Has Not Pled a Special Relationship Giving Rise to Defendant's Duty to Protect........17

B.   DEFENDANT IS ENTITLED TO A MORE DEFINITE STATEMENT REGARDING CONTRIBUTORY INFRINGEMENT CLAIMS.................................................................................19

**V.   CONCLUSION**.................................................................................................................................21

i

# TABLE OF AUTHORITIES

**CASES**

*Artiglio v. Corning, Inc.* (1998) 18 Cal.4[th] 604......................................................................17

*Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009)……………………………………….........……..7

*Barnes v. Yahoo! Inc.* 2005 WL 30055602 at *4 (D. Or. Nov. 8, 2005)................................16

*Barrett v. Rosenthal,* 51 Cal.Rptr.3d 55 (2006)....................................................................15

*Bell Atlantic v. Twombley,* 550 U.S. 544, 556 (2007)…………………..…….........……..7, 18

*Ben Ezra, Weinstein, & Co., v. Am. Online. Inc.* 206 F.3d 980, 986 (10th Cir. 2000)..............16

*Blumenthal v. Drudge,* 992 F.Supp. 44, 49 (Dist. D.C. 1998)..................................................17

*Bridgeport Music, Inc. v. 11C Music, et. al.* 154 F.Supp.2d 1330 (M.D. Tenn., 2001)…….........……11

*Capital Cities Cable, Inc. v. Crisp* 467 U.S. 691 (1984). ........................................................12

*Carafano v. Metrosplash,* 339 F.3d 1119 (9th Cir. 2003)........................................................16

*Cellars v. Pacific Coast Packaging, Inc.,* 189 F.R.D. 575 (N.D. Cal. 1999)............................21

*Davidson v. City of Westminster,* 649 P.2d 894 (Cal. 1982)....................................................19

*Delfino v. Agilent Technologies, Inc.,* 52 Cal.3d 376, 389 (6th App. Dist., 2006)..............................14-16

*Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973 (9th Cir. 1987)……….........…10-11

*Dielsi v. Falk,* 916 F.Supp. 985 (C.D. Cal. 1996)…………………………………….....………......11

*Doe v. America Online, Inc.,* 783 So.2d 1010 (Fla. 2001)........................................................16

*Doe v. MySpace,* 528 F.3d 413 (5th Cir. 2008)....................................................................16

*Drum Major Music v. Young Money Entertainment,* 2002 WL 423350 (S.D.N.Y. Feb. 7, 2012)...........11

*Dustin v. Galaza* 2009 WL 981151 (E.D. Cal. April 9, 2009).................................................20

*Felix the Cat Productions v. New Line Cinema,* 2000 WL 770481 (C.D. Cal. April 28, 2000)...........11

*Firoozye v. Earthlink Network,* 153 F.Supp.2d 1151 (N.D. Cal. 2001)………………..............……..8

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.,*
713 F.Supp.2d 215 (S.D.N.Y. 2010)………………………………………………..........……11

*Green v. Am. Online,* 318 F.3d 465, 472 (3d. Cir. 2003)........................................................15

*Hishion v. King & Spalding,* 467 U.S. 69, 73 (1984)……………………………………............……….6

*In Re BitTorrent Litigation,* No. 2:11-cv-03999(E.D.N.Y. May 1, 2012)……………….............…....3

*Jane Doe One v. Oliver,* 755 A.2d 1000, 1002-04 (Conn. Super. Ct. 2000)..............................................16

*Kathleen R. v. City of Livermore*, 104 Cal.Rptr.2d 772 (1st Dist. 2001).............................................15-17

*Liberty Media Holdings v. Swarm* No. 11-00262-DAE-RLP (Docket NO. 66 - Order Granting in Part Defendant Hatcher's Motion to Dismiss…)(D. Haw. January 30, 2012)............................................18-19

*Liberty Media Holdings v. Swarm…and Does 1-62,* 2011 WL 1869923 (S.D. Cal. May 12, 2011)........19

*Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir. 2005)……................7

*Parker v. Google, Inc.* 422 F.Supp.2d 492, 500-501 (E.D. Pa. 2006)......................................................16

*Marvullo v. Gruner AG & Co.,* 2001 WL 40772, at *7 (S.D.N.Y. Jan. 17, 2001)………............11

*McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir. 1988)………………………….................6

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.,* 380 F.3d 1154, 1160 (9th Cir. 2004)...................21

*Minch v. California Highway Patrol,* 140 Cal. App.4th 895 (3rd Dist. 2006)............................................19

*Moss v. U.S. Secret Service,* 572 F.3d 962 (9th Cir. 2009)………………………….............…………..7

*Robertson v. Dean Witter Reynolds, Inc.* 749 F.2d 530, 533-34 (9th Cir. 1984)…………….........……..7

*Smith v. Intercosmos Media Group, Inc.* 2002 WL 31844907 at *3 (E.D. La. Dec. 17, 2002)................14

*Valdez v. J. D. Diffenbaugh Co.,* 51 Cal. App. 3d 494, 124 Cal. Rptr. 467 (1975)..................................18

*Watermark Publishers v. High Tech. Sys.,*

1997 U.S. Dist. LEXIS 22512 at * 15 (S.D. Cal. Jun 18, 1997)…………………….............………..11

*Weirum v. RKO General, Inc.* 15 Cal.3d 40, 49 (Cal. 1975)...................................................................17

*Zeran v. America Online, Inc.* 129 F.3d 327 (4th Cir. 1998)..............................................................13-14

## STATUTES

17 U.S.C. §102……………………………………….........……….......…………………………..9

17 U.S.C. §106……………………………………….........……….......…………………………..9

17 U.S.C. §301……………………………………….........……….......…………………………..7

47 U.S.C. §230...................................................................................................................13-15

**LEGISLATIVE MATERIALS**

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659….......7,8,9

**SECONDARY SOURCES**

Restatement (Second) Torts, §314 & 314a................................................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

The website for the Northern District of California (www.cand.uscourts.gov/wifi) states that the district "is pleased to announce that free wireless public internet access is now available to persons doing business with the court in all Northern District court locations…Wi-Fi makes it possible for users to connect to the public internet using the wireless technology used in most laptops.  If users are able to connect to a typical home or business Wi-Fi system, they can connect to the court Wi-Fi."

This development was undoubtedly welcomed by judges, attorneys, clerks, and court users of all types.  According to the Plaintiff's negligence claim against Mr. Botson, however, the Northern District now has a duty, which extends to the producers of pornographic materials and Plaintiff herein, to monitor and secure their connection in such a way that no court user can connect to the network to commit a copyright infringement.  This is a hefty burden, especially given the fact that this court (quite intentionally) has offered an unsecured Wi-Fi access that can be used by anyone, including those who wish to commit copyright infringement.   Luckily for this court (and millions of Americans), Plaintiff's theory lacks any legal precedent, is wholly unsupported by existing law and, as one judge has noted, "flies in the face of common sense."[1]

Plaintiff's negligence theory is, instead, the latest incarnation of the copyright trolling phenomenon that has swept through district courts across the country.  Certain features have become hallmarks of this brand of litigation.  First, Plaintiff files a single suit seeking the identities of hundreds of unrelated individuals based on a generalized allegation that each has "shared" one of the plaintiff's copyrighted works – usually a pornographic film with an obviously pornographic title, as here.

Next, the plaintiff seeks an ex parte order for "early discovery" from the court, in the form of ISP subscriber names, addresses, telephone numbers, etc. of the ISP subscriber associated with particular IP addresses.  This is usually accomplished (as it was with regard to

---

[1] *In Re BitTorrent Litigation,* No. 2:11-cv-03999(E.D.N.Y. May 1, 2012)(Doc. 39 at pg. 5)("While Plaintiffs claim that they can amend their complaints to allege negligence against the owner of a WiFi router who failed to password-protect the device which was then used by an intruder to infringe its copyright, this assertion flies in the face of common sense.")

Defendant herein), by assuring the court in the original action that a) the joinder of hundreds of individuals is proper, and b) that Plaintiff intends to amend the complaint to include each; and c) that the requested expedited discovery will be sufficient to "fully identify" the defendants and serve each with process.   Indeed, Plaintiff in the present matter has remained true to form.  In AF Holdings v. Does 1-135 (No. 11-3336-LHK) (hereinafter AF #1), the original matter where Plaintiff obtained Defendant's identity, Plaintiff represented to the court that "Through the information they gather from the ISPs via these subpoenas, the plaintiffs are able to fully "identify"…each P2P network user suspected of violating Plaintiff's copyrights."  (Doc. 8, pg. 2).

After obtaining the identity of each ISP subscriber, Plaintiff may now send threatening letters to each account holder demanding thousands of dollars and threatening to sue the subscriber for $150,000 if they fail to pay.  As Plaintiffs well know, a subscriber's decision to settle is often wholly unrelated to whether or not they have infringed a copyright, and is instead influenced by a desire to avoid the legal expense and embarrassment required to establish one's innocence.

The final step in these mass copyright actions is, almost invariably, a slow death.  AF #1 was no different.  After an Order to Show Cause why the matter shouldn't be dismissed under Rule 4(m) for failure to serve any Defendants within 120 days, the entire matter was eventually dismissed.  Notably, Plaintiff filed a declaration in response to the OTSC which noted that Plaintiff's counsel had filed suit against over literally thousands of "Does" nationwide, but at that time had not served a single complaint.

The instant action is a direct response, and a transparent attempt to convince courts (and "Does") that Plaintiff intends to follow through with their threats and that courts should continue to hand over subscriber IDs en masse.  However, as the complaint makes clear, Plaintiff has no idea whether a particular subscriber has actually committed copyright infringement.  This puts them in a very tricky position, since actually suing people for infringement in this situation might violate Rule 11, as well as exposing the Plaintiff to liability for costs and attorney fees under Copyright Act §505 when the defendant ultimately prevails.

Plaintiff's solution?  File the instant action (and several identical actions) which accuse the account-holder of negligence – never mind the fact that copyright negligence doesn't exist. Plaintiff can now claim that it has served "X" number of defendants, while meanwhile avoiding liability for costs and attorney fees that are available to prevailing defendants in a copyright action.  It is not important that the negligence claim utterly lacks merit; it will serve its purpose nonetheless.  Defendant has been publically "named", as well as being forced to retain an attorney and incur costs to defend himself.  These are potent weapons for a Plaintiff seeking cost of defense settlements and threatening embarrassment to achieve that end.

For the reasons outlined more fully below, Defendant Botson respectfully requests that this court dismiss Plaintiff's ill-considered negligence action and provide a more definitive statement with regard to the allegations of contributory infringement leveled against Defendant Botson.

## II.  FACTUAL BACKGROUND

Plaintiff is the purported owner of the copyrighted adult film that is the subject of this action.  Defendant is an ISP subscriber accused of negligence based on allegations that his internet access was accessed by a "John Doe" that allegedly used said access to commit copyright infringement.

As noted above, the instant action follows a prior action in this district involving the same parties: AF Holdings v. Does 1-135 (5:11-cv-03336-LHK).  AF 1 was filed on July 7, 2011, as a copyright infringement matter against each of the 135 unidentified IP addresses identified in the suit.  On July 14, 2011, Plaintiff sought (and eventually received) an ex parte order for early discovery in the form of ISP subscriber names, addresses, and other personal information. Defendant Botson's was among the Does whose identifying information was obtained in AF 1. Several "Doe" defendants filed Motions to Quash the ISP subpoenas and, on January 19, 2012, Judge Koh Ordered Plaintiff to Show Cause why the matter shouldn't be dismissed for failure to serve defendants under Rule 4(m).  A hearing on this order was held on February 22, 2012 and Plaintiff's counsel was ordered to provide detailed information about the individual case and

other mass BitTorrent cases filed by Plaintiff's counsel.   On March 27, 2012, AF 1 was dismissed without prejudice for failing to serve Defendants within the statutory period.

The instant action was filed on April 24, 2012, and a summons was issued on May 8, 2012.  On May 10, 2012, Defendant Botson was served with a copy of the complaint in this suit, accusing him of negligence and an as-yet-unnamed John Doe of copyright infringement.   On May 31, 2012, Defendant Botson filed a Motion to Dismiss Plaintiff's Complaint.  On June 14, 2012, Plaintiff filed its First Amended Complaint.  For the reasons that follow, Defendant Botson seeks dismissal of the negligence claim brought against him and a more definite statement regarding any secondary infringement claims.

## III. STATEMENT OF ISSUES TO BE DECIDED

1.  Is Plaintiff's Negligence action against Defendant Botson preempted by Copyright Act §301 or the doctrines of conflict preemption or field preemption?

2.  Is Defendant Botson entitled to immunity from suit under CDA §230 based on the allegations that he provided internet access to an unidentified individual that subsequently harmed Plaintiff?

3.  Can Plaintiff's allegations regarding the existence of a duty to survive dismissal under Fed. R. Civ. P. 12(b)(6)?

4.  Is Defendant entitled to a more definite statement regarding contributory infringement claims?

## IV. LEGAL  ARGUMENT

## A.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

A complaint may be dismissed under Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  *Hishion v. King & Spalding,* 467 U.S. 69, 73 (1984).  A dismissal under this rule may be based on the failure to allege a cognizable legal theory, or by the failure to allege sufficient facts under a

1    cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.* 749 F.2d 530, 533-34 (9th Cir.

2    1984).

3           Allegations of fact in the complaint must be taken as true and construed in the light most

4    favorable to the Plaintiff. *See Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940,

5    946 (9th Cir. 2005). Notably, however, "the tenet that a court must accept as true all of the

6    allegations contained in a complaint is inapplicable to legal conclusions," and courts are not

7    "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,*

8    129 S.Ct. 1937, 1949 (2009)(internal quotation marks and citations omitted). As such, "bare

9    assertions amounting to nothing more than a formulaic recitation of the elements" of a claim are

10   not entitled to a presumption of truth." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir.

11   2009).

12          When a complaint fails to adequately state a claim, this fact should be "exposed at the

13   point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic v.*

14   *Twombley,* 550 U.S. 544, 556 (2007). For the reasons outlined more fully below, Plaintiff's

15   complaint fails to state a claim upon which relief may be granted, and thus should be dismissed

16   under Rule 12(b)(6).

17
18   **1.      PLAINTIFF'S NEGLIGENCE CLAIM IS PREEMPTED AND SHOULD BE
             DISMISSED FOR FAILURE TO STATE A CLAIM.**

19   § 301 of the Copyright act provides that

20           "On and after January 1, 1978, **all legal or equitable rights that are equivalent
             to any of the exclusive rights within the general scope of copyright** as
21           specified by section 106 in works of authorship that are fixed in a tangible
             medium of expression and come within the subject matter of copyright as
22           specified by sections 102 and 103, whether created before or after that date and
             whether published or unpublished, **are governed exclusively by this title.**
23           **Thereafter, no person is entitled to any such right or equivalent right in any**
             **such work under the common law or statutes of any State.**"
24

25   17 U.S.C. 301(a)(Emphasis Added) Copyright Act preemption is extremely broad. This

26   district has recognized that

27
28           While the language of section 301 is quite clear, Congress also reinforced
             its desire to sweep broadly in a report accompanying the legislation: 'The

declaration … in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection.' H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5746 (quoted in Rosciszewski v. Arete Associates, 1 f.3d 225, 232 (4th Cir. 1993).

   Thus, Congress has clearly indicated that state-law claims which come within **the subject matter of copyright law and which protect rights equivalent to any of the exclusive rights within the scope of federal copyright law … should be litigated only as federal copyright claims**. Id.

*Firoozye v. Earthlink Network*, 153 F.Supp.2d 1151, 1121-22 (N.D. Cal. 2001) (emphasis added).

   The House report goes on to note that "preemption of rights under State law is complete with respect to any work coming within the scope of the bill, even though the scope of exclusive rights given the work under the bill is narrower than the scope of common law rights in the work might have been. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659. The message is unmistakable: the rights granted by the Copyright Act must be vindicated within the confines of the Copyright Act and its jurisprudence.

   The test for copyright preemption asks two essential questions. First, do the claims fall "within the subject matter of copyright law?" *Firoozye* 153 F.Supp. 2d at 1121-22. Second, do the claims seek to "protect rights equivalent to any of the exclusive rights within the scope of federal copyright law?" *Id.* If the answer to these questions is yes, then Plaintiff's claims "should be litigated only as federal copyright claims." *Id.* In the instant case, the answer to each question is obviously affirmative, and Plaintiff's negligence cause of action against John Botson is therefore preempted by §301.

## A. <u>Plaintiff's Claim is Within the Subject Matter of Copyright</u>

   The first prong of the copyright preemption test asks whether the Plaintiff's claim is within the subject matter of copyright. There can be no doubt that Plaintiff's claim herein, which is based on the alleged unauthorized reproduction and distribution of Plaintiff's copyrighted

work, is within the subject matter of copyright.  The Copyright Act describes the "Subject matter of copyright" as follows.  "Copyright protection subsists, in accordance with this title, in original works of authorship fixed in a tangible medium of expression…Works of authorship include the following categories…(6) motion pictures and other audiovisual work."  17 U.S.C. §102.

As the House Committee report notes,

> "As long as a work fits within one of the general subject matter categories of sections 102 and 103 [sections 102 and 103 of this title], the bill prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain."

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5748.

Thus, the first test for copyright preemption is satisfied whether or not the individual work at issue is deemed copyrightable, and is satisfied solely by virtue of the fact that the work is a motion picture, falling within the subject matter of copyright.  The work that forms the basis of Plaintiff's claim in the instant case qualifies as a motion picture, and thus is within the subject matter of copyright.  The first prong of the preemption test is satisfied.

**B.  <u>Plaintiff Seeks to Protect Rights that are Identical to the §106 Exclusive Rights</u>**

There can be no doubt that Plaintiff's negligence claim against John Botson seeks to protect rights that are equivalent to the section 106 rights of reproduction, distribution, etc. Plaintiff's complaint makes it abundantly clear the negligence claim against Defendant Botson seeks to protect Plaintiff's copyrighted work from unauthorized copying and sharing.  This is precisely the role of copyright law.

Indeed, Plaintiff cannot manage to formulate any statement of its right to relief without reference to its "exclusive rights" under the copyright act or the violation of those rights by "copying." See, e.g. Plaintiff's complaint at ¶58 ("unauthorized copying and sharing of Plaintiff's video"); ¶64 ("copying and sharing of Plaintiff's video" and "interfered with Plaintiff's exclusive rights in the copyrighted work"); ¶ 65 (same); ¶66 ("copying and sharing"); ¶ 67 ("infringements"); ¶68 ("copy and share Plaintiff's copyrighted video" and "interfering with

Plaintiff's exclusive rights in the video."). It seems fair to conclude, based on the allegations of the complaint, that Plaintiff seeks redress for the violation of his exclusive rights, which were violated by the copying and sharing of an unidentified individual.

Plaintiff's own focus on its "exclusive rights" is instructive. 17 U.S.C. §106 is entitled "Exclusive Rights in Copyrighted Works," and lays out the familiar exclusive rights, including the right to distribute and the right to reproduce. These are the rights that trigger copyright preemption. These are *precisely* the rights that Plaintiff claims were violated as a result of Mr. Botson's alleged negligence, and Plaintiff is unable to formulate any version of the claim without reference to its "exclusive rights." Moreover, the act that triggers liability to Plaintiff (under Plaintiff's theory), is the unauthorized copying and sharing of Plaintiff's work by a third party. This is exactly the situation that the twin doctrines of vicarious and contributory copyright liability have been developed to address.

The Ninth Circuit has adopted the "extra element" test to help determine whether the state law claim "seeks to protect rights which are qualitatively different from copyright rights. The state claim must have an 'extra element' which changes the nature of the action" in order to survive preemption *Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973, 977 (9th Cir. 1987). Many courts have addressed this issue and determined that negligence claims do not add the required "extra element" that qualitatively changes the nature of the action, and thus are preempted. As the Central District of California recognized,

> Because the essential allegation is still that Defendants unlawfully copied Plaintiff's ideas, it is still a copyright infringement claim. Moreover, **recharacterization of the claim as one of 'negligence' does not add a legally cognizable additional element** because a general claim for copyright infringement is fundamentally one founded on strict liability. The alteration of the required mental state does not add an 'additional element'... Plaintiff's negligence claim is preempted by federal copyright law.

*Dielsi v. Falk,* 916 F.Supp. 985, 992-993 (C.D. Cal. 1996)(emphasis added and internal citations omitted). The court in *Dielsi* recognized that simply rephrasing a claim does not change the essential elements of the claim.

In addition to the court in *Dielsi* , a number of other courts have found that negligence causes of action are preempted by copyright law and that the alteration of the required mental state does not add a legally cognizable extra element.  See, e.g. *Felix the Cat Productions v. New Line Cinema,* 2000 WL 770481 (C.D. Cal. April 28, 2000)("Recharacterizing Plaintiff's copyright claim as one for negligence does not add an additional element");  *Watermark Publishers v. High Tech. Sys.,* 1997 U.S. Dist. LEXIS 22512 at * 15 (S.D. Cal. Jun 18, 1997) (preempting Plaintiff's negligence claim, and noting "The only possible basis for a duty to protect another from copyright infringement – if such a duty can exist – is in copyright law; thus the alleged existence of a duty is not an 'extra element'");  *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.,* 713 F.Supp.2d 215 (S.D.N.Y. 2010) (negligence claim under either New York or Illinois law was properly preempted by Copyright Act §301); *Bridgeport Music, Inc. v. 11C Music, et. al.* 154 F.Supp.2d 1330 (M.D. Tenn., 2001)(negligence claim preempted by Copyright Act despite elements of 'duty' and 'breach'.); *Marvullo v. Gruner + Jahr AG & Co.,* 2001 WL 40772, at *7 (S.D.N.Y. Jan. 17, 2001)(photographer's negligence claim simply restates copyright infringement claim); *Drum Major Music v. Young Money Entertainment,* 2002 WL 423350 (S.D.N.Y. Feb. 7, 2012)(negligence claim preempted by Copyright Act).

Moreover, Plaintiff seems to conclude that Defendant Botson jointly and severally liable for *statutory damages and attorney's fees*, which are only available to a Plaintiff under the Copyright Act.  Indeed, Plaintiff's prayer for relief seeks "an order that Defendant Botson is jointly and severally liable to the Plaintiff **in the full amount of Judgment** on the basis of Defendant's negligence, (#5), as well as judgment "against **Defendants"** awarding attorney's fees and costs (#6).  Plaintiff would thus like to collect statutory damages from the Copyright Act from Defendant based on the "copying and sharing" of Plaintiff's works, while conveniently avoiding the fact that they cannot state a claim for contributory or vicarious copyright liability under that Act.

Based on the foregoing, it is clear that Plaintiff's negligence claim against Defendant Botson is preempted by Copyright Act §301.  The work at issue is a motion picture – certainly within the subject matter of copyright as defined by §102.  In addition, Plaintiff seeks to protect

rights that are identical to the rights protected by Copyright Law and Plaintiff is incapable, in fact, of asserting any right to relief without reference to these exclusive rights. Because Plaintiff's sole claim against Defendant Botson is preempted, the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to posit a cognizable legal theory entitling Plaintiff to relief.

## C.  Plaintiff's Claims are Also Preempted by the Doctrines of Conflict and Field Preemption

In addition to the obvious statutory preemption via §301, Plaintiff's claims are also preempted under the non-statutory doctrines of federal preemption. A state law cause of action is preempted not only when so decreed by specific statute, like §301. A state law cause of action is also preempted when the Constitution or other federal legislation evidences an intent to fully occupy the field in question, or when there is a fundamental incompatibility between federal and state law. Thus, when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress", it is preempted. See *Capital Cities Cable, Inc. v. Crisp* 467 U.S. 691 (1984).

In the instant case, Plaintiff seeks to hold an ISP subscriber liable for providing internet access to an individual that subsequently used that connection to infringe Plaintiff's copyright. However, holding an information conduit liable for the content of the information transmitted represents a fundamental conflict between Plaintiff's state law claim and the existing federal legislation, including the DMCA, the Copyright Act, and the CDA.

The Copyright Act, DMCA, and CDA all include carefully crafted limitations of liability for mere intermediaries in the information transmission process, like Defendant here. The Copyright Act has created a substantial body of case law discussing the requirements for imposing secondary liability on a third-party that has not directly infringed a copyright. This regime does not authorize the imposition of liability for "negligent infringement."

Moreover, as described further below, the CDA also has broad immunity provisions designed to prevent the imposition of tort liability based on the communications of a third party. The DMCA likewise includes several statutory "safe harbors," that are designed to shield third

party intermediaries from copyright liability resulting from merely transmitting information. Taken together, these demonstrate Congress' desire to occupy the field with regard to third party liability for the electronic communications of another – communications that invariably traverse state lines and defy state regulations.  As such, state regulation over this field is prohibited.

Plaintiff's proposed cause of action directly conflicts with the copyright principles of secondary liability and the broad policies of an open internet underlying both the CDA and the DMCA.  Thus, Plaintiff's cause of action for negligence is also preempted under the doctrines of conflict preemption and field preemption.

## 2.   PLAINTIFF'S NEGLIGENCE CLAIM IS BARRED BY CDA §230 IMMUNITY AND SHOULD BE DISMISSED UNDER RULE 12(B)(6).

Assuming, arguendo, that Plaintiff's cause of action for negligence could survive preemption, Plaintiff's claims are nonetheless barred by Communications Decency Act immunity under 47 U.S.C. §230.  Specifically, §230(c)(1) provides that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. 230(c)(1).  The CDA goes on to state that "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C. 230 (e)(3).

A fundamental policy underlying §230 immunity was "to promote the continued development of the Internet and other interactive computer services and other interactive media," and to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation."  47 U.S.C. §230(b)(1 & 2).  As the 4th Circuit recognized, the CDA was designed to "avoid the chilling effect upon Internet free speech that would be occasioned by the imposition of tort liability upon companies that do not create potentially harmful messages but are simply intermediaries for their delivery.  *Zeran v. America Online, Inc.* 129 F.3d 327, 330-331 (4th Cir. 1998).

Although CDA immunity does not provide immunity from liability under intellectual property laws, Plaintiff's negligence claim *must not* be a claim under intellectual property laws if it is to survive preemption.  Courts have construed "immunity broadly, in the spirit of the CDA's

stated purpose of promoting rather than impeding technology and Internet use." *Smith v. Intercosmos Media Group, Inc.* 2002 WL 31844907 at *3 (E.D. La. Dec. 17, 2002).

Courts must undertake a three-part inquiry to determine whether a defendant is eligible for CDA immunity.  They are "(1) the defendant [is] a provider or user of an interactive computer service; (2) the cause of action treat[s] the defendant as a publisher or speaker of information; and (3) the information at issue [is] provided by another information content provider." *Delfino v. Agilent Technologies, Inc.,* 52 Cal.3d 376, 389 (Court of Appeals, 6th App. Dist., 2006), quoting *Gentry v. eBay, Inc,.* 99 Cal. App. 4th 816, 830 (4th District, 2002).

As noted above, courts must first determine whether the defendant qualifies as a "provider…of an interactive computer service."  Although this phrasing conjures images of traditional internet service providers, (i.e. Comcast or Time Warner), the CDA defines the term in a way that leaves no doubt that it would apply to the allegations against Defendant Botson. Specifically, §230(f)(2) defines an interactive  computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, **including specifically a service or system that provides access to the Internet…"** 47 U.S.C. 230(f)(2)(emphasis added).

Defendant Botson is accused of providing internet access to an individual that ultimately pirated Plaintiff's film.  This act, according to Plaintiff, is the sole basis of Defendant Botson's liability.  The act of providing internet access to a third party, however, is **exactly** the type of activity that qualifies one for CDA immunity as the provider of an interactive computer service and it is specifically included in the definition cited above.  Indeed, the California Court of Appeals examined almost precisely the same issue in *Delfino v. Agilent Technologies, Inc.,* 52 Cal.Rptr.3d 376 (2006).

The Plaintiff in *Delfino* sought to impose liability on Agilent Technologies based on Agilent's provision of internet access to a particular employee, who used that access to send allegedly threatening and defamatory emails.  Plaintiff sought to impose liability on Agilent based on a theory of negligent infliction of emotional distress, based on allegations very similar to those made by Plaintiff in the present case.  Specifically, Plaintiff claimed that Agilent "was

informed and knew that [the employee] was using its computer system" to commit torts against the Plaintiff.   Agilent claimed immunity under the CDA and the trial court confirmed.   On appeal, the 6th Appellate district confirmed the grant of immunity and noted that "Agilent clearly meets the definition of that term under section 230(f)(2), in that it "provides or enables computer access by multiple users." *Id.* at 390.  Another California case, *Kathleen R. v. City of Livermore*, held that a public libraries provision of computers and internet access qualified them for CDA protection as the provider of an interactive computer service.  See 104 Cal.Rptr.2d 772 (1st Dist. 2001).

The conduct here that purportedly gives rise to liability is virtually identical to the conduct of the defendants in *Delfino* and *Kathleen R.,* namely, the provision of internet access to a third party.  As the courts in *Delfino and Kathleen R.* concluded, and as the language of §230 makes clear, a defendant whose liability is premised upon his ownership or control of "**a service or system that provides access to the Internet,"** should properly qualify as  the provider of an interactive computer service, and satisfies the first requirement for CDA immunity.

The second requirement for CDA immunity to apply is that the "the cause of action treat[s] the defendant as a publisher or speaker of information." *Delfino* at 389.  The California Supreme Court has held that the CDA makes no attempt to exclude pre-CDA "distributors" of information, and one who was characterized as a passive distributor is likewise entitled to immunity. *Barrett v. Rosenthal,* 51 Cal.Rptr.3d 55 (2006).

Moreover, although this element is couched in terms that are familiar to defamation suits, "it is clear that immunity under section 230 is not so limited" *Delfino* at 390.  Numerous courts have applied CDA immunity to defendants accused of a variety of torts beyond defamation, including nuisance, premises liability, misappropriation of right of publicity, and, relevantly, negligent failure to control a third party's online conduct.  See, e.g. *Kathleen R., supra,*; *Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119 (9th Cir. 2003); and *Doe v. America Online, Inc.*, 783 So.2d 1010 (Fla. 2001).

Indeed, several courts have specifically held that CDA immunity bars a Plaintiff's claim for negligence, like the one alleged herein.  See, e.g. *Doe v. MySpace*, 528 F.3d 413 (5th Cir.

2008)(defendant immune from liability for negligence); *Carafano v. Metrosplash*, 339 F.3d 1119 (9th Cir. 2003)(same); *Barnes v. Yahoo! Inc.* 2005 WL 30055602 at *4 (D. Or. Nov. 8, 2005)(same); *Ben Ezra, Weinstein, & Co., v. Am. Online. Inc.* 206 F.3d 980, 986 (10th Cir. 2000)(CDA bars claims for negligence and defamation); *Green v. Am. Online,* 318 F.3d 465, 472 (3d. Cir. 2003)(CDA bars claims for negligent failure to police network); *Jane Doe One v. Oliver,* 755 A.2d 1000, 1002-04 (Conn. Super. Ct. 2000)(CDA bars claims for negligence, inter alia); *Parker v. Google, Inc.* 422 F.Supp.2d 492, 500-501 (E.D. Pa. 2006)(CDA bars claims for invasion of privacy, negligence, and defamation).

The case of *Kathleen R.,* noted above, is again instructive.  In that case, Plaintiff attempted to hold the City of Livermore liable for allowing a twelve-year-old to access and download sexually explicit images from an internet connection in the public library.  *Kathleen R.* 104 Cal.2d at 773.  Notably, the Plaintiff alleged that the minor went to the library and downloaded sexually explicit photos onto a floppy disk that he brought to the library.  *Id.*  The minor then allegedly took the floppy disk to another location where he printed the pictures.  The state court of appeals had no trouble determining that Plaintiff was attempting to hold the library responsible as the speaker or publisher of the explicit materials by virtue of the library's role as a conduit for internet service.  The court held that §230 immunizes "interactive computer service providers from liability for mere failure to 'restrict access to offensive material disseminated through their medium.'" *Id.* at 780, quoting *Blumenthal v. Drudge,* 992 F.Supp. 44, 49 (Dist. D.C. 1998).

The allegations against the defendant herein are almost identical to those in *Kathleen R.*  In each Plaintiff seeks to impose liability on the basis of the defendant's provision of internet access to a third party or third parties.  In each, the Defendant is accused only of being a conduit for objectionable material that was downloaded from a connection offered by the Defendant.  In each case, the defendant's liability is premised on a third party's use of the defendant's internet access to copy pornographic materials to a storage device for later use.  And, like the City of Livermore in *Kathleen R.,* the defendant here is entitled to CDA immunity.

The final prong of the test for CDA immunity asks whether "the information at issue [is] provided by another information content provider." *Delfino* at 389.  The CDA defines an information content provider as the "person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet…" 47 USC §203(f)(3). In the present case, it is clear that Defendant Botson is not the creator or entity responsible for the creation or development of the film at issue.  There is clearly no allegation in the present case that Defendant Botson is the creator or developer of the information at issue – Plaintiff's copyrighted work.  As such, Defendant Botson easily satisfies the third prong of the preemption test.

Plaintiff herein explicitly seeks to impose liability on Defendant Botson based on the Defendant's alleged provision of internet access to an unidentified individual that infringed the Plaintiff's copyright.  The provision of internet access to a third party, however, makes Defendant Botson the provider of an interactive computer service and entitles him to immunity under the CDA.  This immunity extends to all attempts to hold the Defendant liable for the allegedly tortious information supplied by a third-party.  Thus, in addition to being preempted as described above, Plaintiff's claims are barred by Defendant's CDA §230 immunity.

## 3.  PLAINTIFF HAS NOT PLED A "SPECIAL RELATIONSHIP" GIVING RISE TO DEFENDANT'S PURPORTED DUTY

The elements of a cause of action for negligence in California (as elsewhere) include duty, breach, proximate cause, and damages. See *Artiglio v. Corning Inc.* (1998) 18 Cal.4[th]. 604, 614.  "The threshold element of the existence of duty is a question of law to be resolved by the court." *Id.*

Plaintiff's alleges that Defendant Botson owed Plaintiff a duty to secure his internet connection to prevent infringement of Plaintiff's copyrights.  The entirety of Plaintiff's allegations involve Defendant's failure to take particular steps – allegations of non-feasance. See, e.g. FAC at ¶61 ("failed to take basic and reasonable steps"); ¶62 ("failed to monitor") ¶63 ("allowed"); ¶64 ("failure to secure").

The California Supreme Court has recognized a critical distinction between one who is accused of non-feasance, rather than active misfeasance.  As explained in *Weirum v. RKO General, Inc.,* "misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e. defendant has created the risk.  Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention."  15 Cal.3d 40, 49 (Cal. 1975).  A defendant has no duty in situations of "non-feasance" unless a "special relationship" exists which would give rise to such a duty.

As recognized by California courts and the Restatement (Second) of Torts, "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Restatement (Second) of Torts §314 (1965).  Indeed, a defendant only has a duty to take actions to protect a third party when some "special relationship" exists between the Defendant and the injured party.  §314(a) discusses these special relationships, which include common carriers, innkeepers, possessors of land in certain circumstances, and one who takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protect.  Restatement (Second) of Torts, §314(a).

In *Davidson v. City of Westminster,* 649 P.2d 894 (1982) the California Supreme Court endorsed this position in a case involving a police officer's duty, noting that "absence of duty is a particularly useful and conceptually more satisfactory rationale [for dismissal of the action] where, absent any special relationship between the officers and the plaintiff, the alleged tort consists merely in police nonfeasance."  The *Davidson* Court went on to state that:

> "As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct.  Such a duty may arise, however, if (a) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relationship exists between the actor and the other which gives the other a right to protection."*Id.* at 203 (internal citations omitted).

It is interesting to compare the actual duties owed by *police officers* to take affirmative action to protect unrelated third parties with the duties that Plaintiff claims are owed by

Defendant Botson, an ordinary citizen with an internet connection, to protect from copyright infringement committed by an unrelated third party. *Minch v. California Highway Patrol* likewise examined the duty of police officers to protect unrelated third parties and the distinction between nonfeasance and misfeasance. 140 Cal.App.4th 895 (3rd District, 2006). In *Minch,* the court observed that

> "Plaintiff asserts that his lawsuit is based upon the CHP's misfeasance, not nonfeasance. However, he has not identified specific conduct by which the officers created a risk of peril. Rather, plaintiff's action is based on the generic claim that the officers did not adequately protect him from the risk of harm. This claim is, in all significant respects, identical to the claim in Mikalian, where the court recognized the claim was one of nonfeasance and upheld a judgment of nonsuit for lack of any duty in tort" *Minch* at *909 (internal citations omitted).

As above, Plaintiff in the instant case has not identified any specific conduct by which Defendant Botson created a risk of peril. Indeed, Plaintiff's action is based on generic claims that Defendant Botson failed to protect the Plaintiff from harm. Because Plaintiff's claim is based on allegations of nonfeasance, Plaintiff must plead a special relationship giving rise to Defendant Botson's duty to protect Plaintiff from harm. Plaintiff here has not alleged any special relationship that would give rise to a duty to prevent injury to Plaintiff's copyrights. Moreover, examining the facts alleged, it seems impossible that Plaintiff will, in fact, be able to plead such existence. As such, Plaintiff has failed to allege a sufficient duty to survive dismissal under Rule 12(b)(6).

## B. DEFENDANT IS ENTITLED TO A MORE DEFINITE STATEMENT REGARDING CONTRIBUTORY INFRINGEMENT CLAIMS

Fed. R. Civ. P. 12(e) provides that "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before the filing of a responsive pleading and must point out the defects complained of and the details desired…"

Plaintiff's complaint against Defendant Botson purports to sue him for negligence. Multiple allegations against Defendant Botson appear, however, to state a claim for contributory infringement.   Defendant therefore requests a more definite statement regarding Plaintiff's allegations of contributory infringement against Defendant Botson if Plaintiff intends to proceed on those grounds.

The proper test in evaluating a motion for a more definite statement is whether the complaint provides the defendant with a sufficient basis to frame responsive pleadings.  *Cellars v. Pacific Coast Packaging, Inc.,* 189 F.R.D. 575 (N.D. Cal. 1999).   A party alleging contributory infringement must show "(1) direct infringement by a primary infringer, (2) knowledge of the infringement, and (3) material contribution to the infringement." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.,* 380 F.3d 1154, 1160 (9th Cir. 2004).

Plaintiff has included allegations that arguably satisfy each element of a contributory infringement claim in its claim for negligence against Mr. Botson.  Plaintiff has alleged that John Doe is the primary infringer of Plaintiff's copyright.  This constitutes the bulk of Plaintiff's complaint, and is incorporated into Count IV against Defendant Botson.  Second, Plaintiff has alleged that Defendant Botson had knowledge of the infringing acts (¶61, ¶62, and ¶64) and that Defendant Botson's internet connection was a substantial cause of the infringement.   However, Plaintiff chose to label the cause of action as one of negligence, in a transparent attempt to avoid exposing themselves to attorney fees and costs under Copyright Act §505 when they are ultimately unable to support their allegations.

Plaintiff has apparently accused Defendant Botson of the elements of contributory infringement, but simultaneously claims that it has accused him only of negligence.  Because Defendant cannot ascertain whether he has actually been accused of contributory infringement based on John Doe's alleged use of his internet connection, Defendant is unable to frame a responsive pleading to these allegations.  As such, Defendant requests that Plaintiff provide a more definite statement with regard to any claims for contributory infringement against Defendant Botson.

## IV.  CONCLUSION

For the reasons outlined above, Defendant respectfully requests that this court dismiss the claim of negligence against Defendant Botson.  Plaintiff's cause of action is explicitly preempted by Copyright Act §301, and is further preempted by the doctrines of conflict and field preemption.  Additionally, Defendant is immune from liability for the alleged acts under CDA §230 and Plaintiff's complaint should therefore be dismissed.  Plaintiff has likewise failed to adequately allege the existence of a special relationship giving rise to a duty owed by the Defendant to the Plaintiff.  Each of these failings is independently adequate for dismissal.

Finally, Defendant requests a more definite statement as to the allegations of contributory infringement against Defendant, if Plaintiff intends to pursue such an action based on the activities alleged in its complaint against Defendant Botson.


June 28, 2012


Respectfully Submitted,

__/S/ Nicholas Ranallo_____
Attorney for Defendant Botson
Nicholas Ranallo, Attorney at Law
California Bar # 275016
371 Dogwood Way,
Boulder Creek, CA 95006
(831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June, 2012, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.


By:___/s/Nicholas Ranallo
Nicholas Ranallo