Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
21 Locust Avenue, Suite #1
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS LLC, <br><br> Plaintiff, <br> v. <br><br> JOHN DOE AND JOHN BOTSON, <br><br> Defendants. | No. **3:12-cv-2048-EJD** <br><br> **PLAINTIFF AF HOLDINGS LLC'S OPPOSITION TO DEFENDANT BOTSON'S MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND FOR A MORE DEFINITE STATEMENT** |

**<u>PLAINTIFF AF HOLDING LLC'S OPPOSITION TO DEFENDANT BOTSON'S MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND FOR A MORE DEFINITE STATEMENT</u>**

Plaintiff AF Holdings LLC ("Plaintiff"), through its undersigned counsel, hereby files this opposition to Defendant Botson's ("Defendant") motions to dismiss and for a more definite statement.

**INTRODUCTION**

Federal courts throughout California have recognized that the negligence claims asserted by Plaintiff in its first amended complaint could survive a motion to dismiss. *See e.g.*, *Liberty Media Holdings, LLC v. Felix Latimore, et al.*, No. 11-cv-00040 (S.D. Cal. July 11, 2011), ECF No. 9 (recommending the granting of a motion for default judgment against a Defendant accused of negligence); *AF Holdings LLC v. John Doe*, No. 12-1519 (S.D. Cal. July 12, 2012), ECF No. 4 at 6 ("Accordingly, Plaintiff's negligence cause of action could withstand a motion to dismiss."). Defendant disagrees with these findings and moves to dismiss Plaintiff's complaint on grounds of

preemption, statutory immunity, and lack of a special relationship giving rise to a duty. (ECF No. 17.) As discussed herein, none of the arguments asserted by Defendant are a sufficient basis for dismissing Plaintiff's complaint.

Before moving to the legal argument section of its brief, Plaintiff responds to Defendant's opening remarks. Defendant begins his brief by suggesting that this Court—unless it grants Defendant's motion to dismiss—would be opening this District up to immeasurable liability unless this District's public wi-fi operators managed to "monitor and secure its connection in such a way that no court user can connect to the network to commit a copyright infringement." (ECF No. 17 at 7.)[1] This, of course, is a severe mischaracterization of the law of negligence. This District does not have a duty to prevent any-and-all copyright infringement from occurring via its public wi-fi system. Instead, it has a duty—as Mr. Botson does—to exercise reasonable care in administering its public wi-fi system, taking into account the potential harm that might foreseeably be inflicted on other people. For the record, this District recognizes its duty and has taken reasonable steps to prevent the misuse of its public wi-fi system. (*See* Northern District of California's Court Wi-Fi Statement, attached hereto as Exhibit A) (stating in the Terms of Use that a user cannot participated in the "infringing, misappropriating or violating the intellectual property, publicity, privacy or other proprietary rights of any party.")

Next, Defendant states that Plaintiff's negligence theory is the latest incarnation of the "copyright trolling phenomenon that has swept through district courts across the country." (ECF No. 17 at 7.) Specifically, Defendant suggests that copyright holder Plaintiffs are using negligence theories as an end-run around the prevailing party fees provision of the Copyright Act. (*Id.* at 9.) However, the premise on which this argument rests—namely that copyright holders are unwilling to name and serve infringers—is demonstrably false. Copyright holders, including Plaintiff, regularly name and serve and serve BitTorrent-based infringers with process. *See e.g.*, *Achte/Neunte Boll Kino v. Michael Famula*, No. 11-0903 (N.D. Ill. Feb. 9, 2011); *Achte/Neunte Boll Kino v. Daniel Novello*, No. 11-0898 (N.D. Ill Feb. 9, 2011); *Hard Drive Productions, Inc. v. Syed Ahmed*, No. 11-2828

---

[1] The page references throughout this brief refer to the page numbers automatically generated by the Court's ECF system, not the page numbers in the Defendant's brief.

(N.D. Ill. Oct. 25 2011); *Boy Racer, Inc. v. Philip Williamson*, 11-cv-3072 (E.D. Cal. Dec. 12, 2011); *First Time Videos, LLC v. Mike Younger*, No. 11-3837 (N.D. Ill. Dec. 30, 2011); *Millennium TGA, Inc. v. Tyree Paschall*, No. 12-792 (S.D. Ca. Apr. 2, 2012); *Hard Drive Productions, Inc. v. Gessler Hernandez*, No. 11-22206 (S.D. Fla. Apr. 9, 2012); *First Time Videos LLC v. William Meyer, Jr.*, No. 11-690 (E.D. Va. Apr. 16, 2012); *First Time Videos LLC v. Christopher Plotts*, No. 11-8336 (N.D. Ill. Apr. 17, 2012); *Hard Drive Productions, Inc. v. John Doe and Matthew Rinkenberger*, No. 12-1053 (C.D. Ill. Apr. 24, 2012); *AF Holdings LLC v. John Doe and Josh Hatfield*, No. 12-2049 (N.D. Cal. Apr. 24, 2012); *AF Holdings LLC v. John Doe and Francisco Rivas*, No. 11-3076 (E.D. Cal. Apr. 25, 2012); *Hard Drive Productions, Inc. v. John Doe and Soukha Phimpasouk*, No. 11-3826 (N.D. Cal. May 10, 2012).

Rather than a "copyright trolling phenomenon," Plaintiff's efforts in the courts (and ostensibly those of other copyright holders) are the only possible response to the well-recognized digital infringement epidemic. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928–29 (2005) (citing the concern that "digital distribution of copyrighted material threatens copyright holders as never before."). The Internet is on pace to become the largest medium of commerce, social interaction and media consumption. Yet large swaths of it remain lawless. As gatekeepers to the digital realm, network operators cannot abdicate all responsibility for what occurs via their networks. The question of whether a given operator network operator exercised reasonable care in the administration of his or her network is necessarily a fact-specific inquiry. It cannot, as Defendant would prefer, be addressed as a matter of law in all circumstances.

## LEGAL STANDARD

"[D]ismissal for failure to state a claim is proper only if it is clear that no relief could be granted under any set of facts could be proved consistent with the allegations." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993); *See also* Fed. R. Civ. P. 12(b)(6). A court "must accept all material allegations in the complaint as true, and construe them in light most favorable to the plaintiff." *NL Industries v. Kaplan*, 792 F.2d 896 (9th Cir. 1986). Accordingly, the court's task in a Motion to Dismiss adjudication is a limited one; "[t]he issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Vega v. JP*

*Morgan Chase Bank, NA*, 654 F. Supp. 2d 1104 (E.D. Ca. 2009) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**ARGUMENT**

**I. NO THEORY OF PREEMPTION APPLIES TO THE OPERATION OF A RESIDENTIAL COMPUTER NETWORK**

Defendant's opening argument is that Plaintiff's claim is preempted by the Copyright Act. (ECF No. 17 at 11-16.) Defendant also argues that Plaintiff's claim is preempted under the doctrines of conflict and field preemption. (*Id.* at 16-17.) As discussed herein, Defendant's preemption arguments are unavailing.

**A. Operating a Residential Network is Not an Exclusive Right Enumerated in 17 U.S.C. § 106**

Defendant is correct that 17 U.S.C. § 301 preempts all infringement actions that are not brought under the Copyright Act. (ECF No. 17 at 12.) The negligence claim against Defendant, however, is distinct from an infringement claim. Plaintiff does not assert that Defendant infringed on its copyright. To the contrary, Plaintiff's claims that Defendant is liable for the damage he caused by virtue of his negligent operation of a home network. Plaintiff intends to identify and sue the individual who is responsible for the infringement. The harm caused by Defendant's negligence is a *sui generis* harm distinct from infringement.

The cases cited by Defendant instruct that negligence claims are preempted only when they merely supplement direct infringement claims against a particular party. *See Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996) ("But this [negligence] claim merely recharacterizes a copyright infringement claim as one for negligence. Because the essential allegation is still that Defendants unlawfully copied Plaintiff's ideas, it is still a copyright infringement claim."); *Gary Friedrich Enter. v. Marvel Enterprises*, 713 F. Supp. 2d 215, 227 (S.D.N.Y. 2010) (rejecting negligence claim based on a duty not to infringe upon the intellectual property rights of the plaintiffs); *Bridgeport Music, Inc. v. 11C MUSIC*, 154 F. Supp. 2d 1330, 1334 (M.D. Tenn. 2001) (preempting allegations that defendants were "'grossly negligent' in determining whether the Infringing Compositions and/or Sound Recordings and/or Records in issue infringed upon any other, pre-existing musical

composition and/or sound recording."). Defendant did not commit "negligent infringement" against Plaintiff's copyright; Defendant's negligence lead to the infringement by someone else.

### i. Distinguishing *Liberty Media Holdings v. Tabora*

On July 9, 2012, the Honorable Lewis A. Kaplan of the Southern District of New York dismissed a negligence claim against an Internet account holder on grounds of preemption. *Liberty Media Holdings, LLC v. Cary Tabora*, et al., No. 12-cv-2234 (S.D.N.Y. July 9, 2012). The Court should not follow the holding in that case for two reasons. First, Judge Kaplan committed clear error in holding that secondary theories of liability are preempted by the Copyright Act. Second, unlike the plaintiff in *Liberty Media Holdings*, Plaintiff has not claimed that Defendant, "knowingly facilitated and actively participated in [another's] alleged infringement."

#### 1. Secondary theories of infringement liability are not preempted by the copyright act.

"The Copyright Act does not expressly render anyone liable for infringement committed by another. In contrast, the Patent Act expressly brands anyone who 'actively induces infringement of a patent' as an infringer and further imposes liability on certain individuals labeled 'contributory' infringers." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434-35 (1984) (internal citations omitted). The doctrine of contributory infringement traces its roots back at least one century. *See Kalem Co. v. Harper Brothers,* 222 U.S. 55, 62-63 (1911) ("If the defendant did not contribute to the infringement it is impossible to do so except by taking part in the final act."). Because contributory infringement remains a common law doctrine—at least with respect to copyrights—it cannot possibly be deemed to preempt state law theories of secondary liability. *See* U.S. Const. Art. IV cl. 2 ("This Constitution, and the *Laws of the United States*… shall be the supreme law of the land….") (emphasis added). The *Liberty Media Holdings* order did not contain any discussion or citation to authority that indicated on what basis the court invoked the common law contributory infringement doctrine to preempt a state law negligence claim.

#### 2. Plaintiff's claims in this case are distinguishable.

The *Liberty Media Holdings* order emphasized the peculiar nature of the pleadings in that case. *See Liberty Media Holdings*, No. 12-cv-2234 at 5 n 17 ("It bears emphasis that, despite the

'negligence' label, this complaint alleges that Tabora knowingly facilitated and actively participated in Whetstone's alleged infringement. This case does not involve a concededly ignorant but allegedly careless defendant.") Unlike the *Liberty Media Holdings* case, this case does involve a concededly ignorant but alleged careless defendant. (ECF No. 15.) Plaintiff has not alleged that Defendant knowingly facilitated and actively participated in anyone's infringement. (*Id.*) Instead, Plaintiff has alleged that Defendant was either aware that someone was using his home network for improper purposes or was extremely careless in operating it. (*Id.* ¶¶ 57-68.)

### B. Neither Conflict nor Field Preemption is a Relevant Legal Theory Under the Circumstances of the Instant Action

Defendant argues that Plaintiff's claims are also preempted by the doctrines of conflict and field preemption. (ECF No. 17 at 16-17.) It is not clear on what basis Defendant is arguing conflict preemption. For conflict preemption to apply, Defendant must identify a specific federal statute and a specific state law that are in conflict. *Public Util., Gray Harbor, WA v. Idacorp*, 379 F.3d 641, 649-650 (9th Cir. 2004). Here, he does neither, other than vaguely referencing the Copyright Act, the Digital Millennium Copyright Act and the Communications Decency Act. (ECF No. 17 at 16-17.) None of these statutes relate to the operation of a home Internet connection. With respect to field preemption, Defendant must make a showing that the federal regulatory scheme is so comprehensive that it completely occupies the relevant field. *Idacorp*, 379 F.3d at 647. Defendant fails to cite to any case in support of his field preemption argument. (ECF No. 17 at 16-17.) There is nothing for Plaintiff to respond to in this regard.

### II. DEFENDANT IS INELEGIBLE FOR CDA § 230 IMMUNITY BECAUSE PLAINTIFF'S CAUSE OF ACTION DOES NOT RELATE TO THE DISSEMINATION OF OFFENSIVE MATERIAL

Defendant's second argument is that Plaintiff's negligence claim is barred by section 230 of the Communications Decency Act ("CDA"). (ECF No. 17 at 17.) This provision prohibits, "hold[ing] interactive computer services liable for their failure to edit, withhold or restrict access to offensive material disseminated through their medium." *Blumenthal v. Drudge*, 992 F.Supp. 44, 49 (D.D.C. 1998). Defendant does not cite to, nor is Plaintiff's counsel aware of, any case where a network operator successfully invoked section 230 immunity for torts arising from the dissemination

6
OPPOSITION TO MOTIONS TO DISMISS AND FOR A MORE DEFINITE STATEMENT   CASE NO. 5:12-cv-2048-EJD

of non-offensive material. There is a simple reason why such a case does not exist: the CDA relates exclusively to offensive speech.

The CDA, was enacted to "deter and punish trafficking in obscenity, stalking, and harassment by means of computer." 47 U.S.C. § 230(b)(5). Congress recognized that holding online service providers (Facebook or Myspace) and Internet service providers (Comcast and Time Warner) liable for the offensive speech of their users would foster a "[C]hilling effect upon Internet free speech…." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330-331 (4th Cir. 1998). Such companies would have no option but to deploy aggressive speech filters if they were exposed to tort liability for the offensive speech of their users.

The cases cited by Defendant all relate to immunity from tort liability for offensive speech. (ECF No. 17 at 17-21.) For example, the two cases in chief relied on by Defendant in support of his section 230 immunity claim are *Delfino v. Agilent Technologies, Inc.*, 52 Cal.Rptr.3d 376 (2006) and *Kathleen R. v. City of Livermore*, 104 Cal.Rptr.2d 772 (1st Dist. 2001). In *Delfino*, an employer successfully invoked section 230 immunity to avoid tort liability for an employee's threatening and harassing e-mails. 52 Cal.Rptr.3d 376. In *Kathleen R.*, the City of Livermore, California successfully invoked section 230 immunity for the library's alleged failure to prevent a minor from accessing pornographic materials via the library's public computers. 104 Cal.Rptr.2d 772. In both instances, the speech in question was identified in the CDA's policy statements. *See* 47. U.S.C. § 230(b)(5) (ensuring vigorous enforcement of laws designed to, "deter and punish trafficking in obscenity, stalking and harassment by means of computer.")

In this case, Plaintiff is not seeking to impose liability on Defendant for his, "failure to edit, withhold or restrict access to offensive material disseminated through his residential network." *Blumenthal*, 992 F.Supp. 44 at 49. Instead, Plaintiff is seeking to impose liability on Defendant for the negligent maintenance of his residential network, which allowed a third-party to commit industrial-scale infringement of Plaintiff's copyrighted works. (ECF No. 15.) There is simply no basis on which to confer section 230 immunity on Defendant.

///

///

### III. DEFENDANT'S DUTY TO EXERCISE REASONABLE CARE IN THE OPERATION OF HIS WI-FI NETWORK DOES NOT REQUIRE A SPECIAL RELATIONSHIP

Defendant's third argument is that he owes no duty to Plaintiff, absent a special relationship. (ECF No. 17 at 21.) This argument is premised on Defendant's characterization of Plaintiff's claims against him as "non-feasance rather than active misfeasance." (*Id.* at 22.) Defendant's premise is clearly false, and his argument must fail. Further, in this case the question of duty must first be put to the fact finder.

#### A. Defendant was Engaged in Misfeasance, not Nonfeasance

Plaintiff's claim against Defendant is that he negligently operated his residential network. (ECF No. 15.) Plaintiff's claim is comparable to a typical claim for negligent operation of a motor vehicle. Like Defendant, a negligent driver is deemed negligent for his or her failures (e.g. failure to obey the speed limit, stop at a stoplight, maintain a safe trailing distance or otherwise observe traffic laws). Yet no one would seriously argue that a driver is not liable for negligence—absent a special relationship—in an accident caused by the driver's failure obey the speed limit. This is because operating a motor vehicle in an unsafe manner is what creates a risk. The same is true with recklessly operating a computer network. In contrast, nonfeasance claims involve the failure of someone to come to the aid of another with respect to a circumstance not originally of the actor's making. The classic example is the Good Samaritan scenario. Absent a special relationship, one is not obligated to aid another.

The cases cited by Defendant illustrate the foregoing distinction well. In *Weirum v. RKO General, Inc.*, 15 Cal.3d 40 (Cal. 1975), a rock radio station conducted a contest which rewarded the first contestant to locate a traveling disc jockey. In the course of their pursuit of the disc jockey's vehicle, two minors caused a traffic accident that resulted in one of their deaths. *Id.* at 45. The surviving wife and children of the decedent sued the radio station. *Id.* Affirming the jury's finding of a duty of care, the Supreme Court of California held that the defendant's reliance on cases involving the failure to prevent harm to another was misplaced. *Id.* at 49. The court reasoned that the radio station's reckless operation of a contest—similar to Defendant's reckless operation of network—was a misfeasance rather that a nonfeasance. *Id.*

In *Davidson v. City of Westminster*, 649 P.2d 894 (Cal. 1982), the Supreme Court of California held that police officers who had a laundromat under surveillance when an assailant stabbed laundromat patron, Yolanda Davidson, were engaged in, at most, nonfeasance. The court reasoned that the police officers had taken no affirmative act to create the risk that resulted in Ms. Davidson's stabbing. *Id.* In other words, the police officers were merely bystanders to an unfortunate incident. In this action, the Defendant's reckless operation of his network was an affirmative act.

In *Minch v. California Highway Patrol*, 140 Cal.App.4th 895 (3rd Dist., 2006), the California 3rd District Court of Appeal affirmed a trial court's granting of summary judgment against a tow truck operator in a personal injury action brought against the California Highway Patrol. The tow truck operator was struck at the scene of a traffic accident and alleged that the California Highway Patrol failed to properly regulate the accident scene. *Id.* The appellate court held that the tow truck operator's claims amounted to nonfeasance accusations because the California Highway Patrol did not create the accident. *Id.* In contrast, in this action Defendant created the metaphorical accident scene.

### B.  The Question of Duty Must First be Put to the Fact Finder

Although the question of duty is a question of law, "[f]oreseeability of the risk is a primary consideration establishing the element of duty," *Weirum v. RKO Gen., Inc.*, 539 P.2d 36, 46 (Cal. 1975) (citing *Dillon v. Legg*, 441 P.2d 912 (Cal. 1968)), and the question of whether a particular risk was foreseeable is a question of fact for the jury. *Wright v. Arcade Sch. Dist.*, 40 Cal. Rptr. 812 (Cal. Ct. App. 1964). Here, neither party is arguing that a reckless network operator could never owe a duty to a third party for harmful acts committed via the network. Nor would such an argument be made in good faith. The Internet will soon be the most significant medium of commerce, social interaction and media consumption. It would be absurd to conclude that the gatekeepers to the world's largest market could never owe a duty to third parties. The next major question is foreseeability, and that is a question for which Plaintiff is entitled to submit evidence.

### IV.   DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT IS NOT RIPE

The Court should deny Defendant's motion for a more definite statement without prejudice because it is not ripe until the Court rules on Defendant's motion to dismiss. After the Court rules on

1  Defendant's motion to dismiss, the claim will either fail or survive. Assuming the claim survives,
2  that will be the time to consider the definiteness of Plaintiff's negligence claim.

## CONCLUSION

For the reasons described herein, the Court should deny Defendant's motions.

Respectfully Submitted,

PRENDA LAW INC.

**DATED: July 16, 2012**

By:   /s/ Brett L. Gibbs

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
21 Locust Avenue, Suite #1
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 16, 2012, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's ECF system, in compliance with Local Rule 5-6.

                                                  /s/ Brett Gibbs
                                                  Brett L. Gibbs, Esq.