Nicholas Ranallo, Attorney at Law
SBN 275016
371 Dogwood Way
Boulder Creek, CA 95006
Phone: (831) 703 -4011
Fax:     (831) 533 – 5073
nick@ranallolawoffice.com

Attorney for Defendant John Botson

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| AF HOLDINGS, LLC | Case No.: 5:12-cv-02048-EJD |
| Plaintiff, | DEFENDANT BOTSON'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS |
| vs. | |
| JOHN DOE & JOHN BOTSON | Hearing: September 28, 2012 Time: 9:00 A.M. |
| Defendant | |

### I.    Introduction

Plaintiff herein seeks to impose liability on Defendant Botson for the infringement of its "exclusive rights," while simultaneously claiming that its cause of action is unaffected by existing theories of copyright preemption, secondary copyright liability, CDA immunity and legal duty.   On June 30, 2012, Defendant Botson filed a Motion to Dismiss Plaintiff's First Amended Complaint on the grounds that 1) Plaintiff's Negligence Claim is Preempted; 2) Defendant is entitled to CDA §230 immunity, and 3) Defendant lacked a legal duty to protect Plaintiff from copyright infringement.

On July 9, 2012, the Southern District of New York considered another mass BitTorrent Plaintiff's allegations of negligence, and found that "**The negligence claim suffers from at least two problems, each independently fatal to its survival.**"   *Liberty Media Holdings, LLC v. Tabora & Whetstone,* 1:12-cv-02234-LAK (ECF Doc. 33 – Memorandum Opinion)(S.D.N.Y., July 9, 2012).   The court then determined that Plaintiff's negligence claims were preempted by

Copyright Act § 301, exactly as Defendant Botson argued in his Motion to Dismiss.  A copy of the court's Memorandum Opinion is annexed hereto as Exhibit A.

Plaintiff's opposition incorrectly states that "Federal Courts throughout California have recognized that the negligence claims could survive a motion to dismiss..." (Doc. 21 at 1).  In support of this proposition, Plaintiff cites to *Liberty Media v. Felix Latimore, et. al.* , No. 11-cv-00040 (S.D. Cal. July 11, 2011)(ECF No. 9).  A simple reading of this order, which is attached as Exhibit B, totally undermines Plaintiff's argument.  In granting default judgment to Liberty Media, the court NEVER addresses any negligence cause of action, focusing instead on copyright infringement.  The word "negligence" is not mentioned a single time in the document cited by Plaintiff.  The sole other "federal court throughout California" cited by Plaintiff was an order *denying* Plaintiff's unopposed ex parte application for early discovery, that did not address any of the issues regarding duty, preemption, or immunity discussed herein[1].

Plaintiff's cause of action against Defendant Botson seeks to protect the rights granted to Plaintiff by the Copyright Act while simultaneously avoiding the rules regarding preemption, secondary liability, and attorney fees set down in that Act.  The Southern District of New York considered the same cause of action in the identical BitTorrent context, and determined that Plaintiff's cause of action suffers from "fatal flaws," including federal preemption.   Plaintiff's Opposition to Defendant's Motion to Dismiss does nothing to counsel a different result here than the court reached in *Tabora*.  As outlined in Defendant's Motion to Dismiss and elaborated further herein, Plaintiff's complaint suffers from multiple flaws, "each independently fatal to its survival." *Id.*

//

//

//

---

[1]  Plaintiff takes similar liberties when attempting to show that Plaintiffs aren't simply seeking to avoid attorney fees under §505, and instead "regularly name and serve BitTorrent-based infringers with process."  (Doc 21 at 2).  In support of this proposition, Plaintiff cites to thirteen cases (out of the tens of thousands of Does originally sued by Plaintiff's counsel).  Of these, five are negligence actions like the instant one (where only "John Doe" is accused of copyright infringement); in at least three others Plaintiff has apparently not served anyone in any capacity; in one the Defendant was voluntarily dismissed before answering the complaint; in one the Defendant has openly admitted to downloading the work, and the remainder involve default judgments.

## II.   Argument

**1.   Plaintiff's Negligence Claims Are Preempted**

Plaintiff makes three arguments that their negligence claim is not preempted by the Copyright Act.  First, Plaintiff argues that "operating a residential network is not an exclusive right enumerated in U.S.C. §106," (Doc. 21 at 4), and thus Plaintiff's claim is not preempted. Second, Plaintiff argues that "Secondary theories of infringement liability are not preempted by the Copyright Act" (Doc. 21 at 5).  Finally, Plaintiff simply asserts  that "neither Conflict nor Field Preemption is a Relevant Legal Theory" (Doc. 21 at 6).  Defendant will address each of these arguments in turn.

A.   <u>Plaintiff Seeks to Protect its "Exclusive Rights" from "Copying and Sharing"</u>

Plaintiff's first argument entirely avoids discussion of the actual case law surrounding copyright preemption under §301, and claims that since "operating  a  residential network" is not listed in the exclusive rights under §106, a claim against Mr. Botson cannot be preempted. Plaintiff's argument misstates the focus of a copyright preemption analysis.

The focus of the preemption inquiry is not the acts of the Defendant, but rather on the rights claimed by the Plaintiffs.  A review of the case law confirms this focus.  In *Kodadek v. MTV Networks, Inc*, the Ninth Circuit stated the test for  copyright preemption as follows:

> A state law cause of action is preempted by the Copyright Act if two elements are present. **First, the rights that a plaintiff asserts** under state law must be "rights that are equivalent" to those protected by the Copyright Act. 17 U.S.C. § 301(a); 1 Nimmer, § 1.01[B] at 1-11. Second, the work involved must fall within the "subject matter" of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103. *Id.*

152 F.3d 1209, 1212 (9th Cir. 1998)(emphasis added).  The Ninth Circuit determined that Kodadek's claims were preempted because "Kodadek's complaint expressly bases his unfair competition claim on rights granted by the copyright act." *Id.* at 1213.

Like the Plaintiff in *Kodadek,*  Plaintiff's claims herein are based on rights granted by the Copyright Act.  Plaintiffs only claims in this case are premised on the violation of its "exclusive rights," by "copying and sharing," and Plaintiff uses these formulations repeatedly in its FAC against Defendant.  See, e.g. FAC at ¶ 58 ("unauthorized copying and sharing of Plaintiff's

video"); ¶63 ("copying and sharing of Plaintiff's video" and "interfered with Plaintiff's exclusive rights in the copyrighted work"); ¶ 64 (same); ¶65 ("copying and sharing"); ¶ 66 ("infringements"); ¶67 ("copy and share Plaintiff's copyrighted video" and "interfering with Plaintiff's exclusive rights in the video").   The focus of the copyright preemption inquiry is whether the **the rights that a Plaintiff asserts** are equivalent to the §106 rights.   Here, Plaintiff seeks to protect its "exclusive rights" against "copying and sharing."   As such, Plaintiff's claims are clearly preempted.

B.   <u>Liberty Media is Directly On Point and Correctly Decided</u>

Plaintiff next argues that *Liberty Media Holdings v. Tabora* should be ignored, despite (or because of) the fact that it directly considered Plaintiff's negligence claim and concluded that such claims are preempted.   Plaintiff argues that this decision should be disregarded because "Secondary theories of infringement liability are not preempted by the copyright act."   (Doc. 21 at 5).   Plaintiff cites no authority for this proposition, and it is easily disproven.   The Plaintiff in *Liberty Media* ignored the preemptive effect of secondary liability doctrines, but the court states

> "Liberty nevertheless argues that its negligence claim asserted here is not preempted because, as the Court understands the argument, the negligence claim rests on infringement by others whereas the Copyright Act provides a remedy only against a direct infringer.   In light of the preceding discussion and the doctrine of contributory infringement — which Liberty's memorandum ignores entirely — that position is untenable."

*Liberty Media v. Tabora,* No. 12 Civ. 2234 (S.D.N.Y. July 9, 2012).   Plaintiff herein essentially urges this court to ignore the doctrines of secondary liability, and ignore the *Liberty Media* decision because it *didn't* ignore secondary infringement.

The Ninth Circuit recently addressed the issue of copyright preemption and secondary liability in *Ryan v. Editions Limited West*.   The Plaintiff in *Ryan* brought a state law claim for unfair competition against Editions Limited West,   as well as claims for contributory and vicarious copyright infringement.   The Ninth Circuit upheld the lower court's determination that the state law claim was preempted, stating that "Ryan argues that some allegations in her complaint allege rights not protected under the Act; **however the allegations to which she**

**points involve the encouragement or inducement of copyright infringement, which is an element of the federal contributory infringement claim**. The Copyright Act therefore preempts Ryan's unfair competition claim." 2011 WL 730491 at *1 (9th Cir. 2011)(internal citations omitted)(emphasis added). It is apparent from the foregoing that secondary theories of infringement are preempted by the Copyright Act, despite Plaintiff's wholly unsupported assertions to the contrary.

Plaintiff next argues that this Court should ignore the holding in *Liberty Media*, because "Plaintiff's claims in this case are distinguishable." (Doc. 21, pg. 5). Plaintiff would like this court to believe that since "Plaintiff has not claimed that Defendant, 'knowingly facilitated and actively participated in [another's] alleged infringement," but has instead alleged that "Defendant was either aware that someone was using his home network purposes or was extremely careless in operating it" (Doc. 21 at 5, 6), that it's cause of action for negligence should survive where *Liberty Media*'s failed.

Plaintiff makes a distinction without difference. First, simply stating that the Defendant committed acts that come short of copyright infringement does not prevent the claims from being preempted by the Copyright Act. As frequently stated in this context, "the shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *U.S. ex rel Berge v. Bd. Of Trustees of Univ. of Ala.,* 104 F.3d 1453, 1463 (4th Cir. 1997). *See Also, Ehat v. Tanner,* 780 F.2d 876, 878 (10th Cir. 1985)(same). Thus, even assuming that Plaintiff fell short of alleging contributory infringement, this would not prevent the doctrine of contributory infringement from preempting his state law claim.

Second, Plaintiff has, in fact, stated the elements of a contributory infringement claim against Defendant, though under the heading of negligence. A contributory infringer is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971); *see Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir.1996). Courts do not require actual knowledge; rather, a defendant incurs contributory copyright liability if he has reason to know of the third party's direct infringement. *See*

*Cable/Home Communication Corp.,* 902 F.2d at 846 (11th Cir. 1990); *Sega Enter. Ltd. v. MAPHIA,* 948 F.Supp. 923, 933 (N.D.Cal.1996).   Plaintiff herein has alleged that Defendant "had actual or constructive knowledge" (¶59, 60, ) and "knew or should have known" (FAC ¶ 65) of infringement.   Plaintiff's attempt to distinguish *Tabora* on this basis is therefore unavailing.   The fact is that *Tabora* is directly on point, and correctly decided.   Plaintiff wishes to avoid the implications of the decision simply because the decision is fatal to its claim.

C.   <u>Plaintiff's Claims are Likewise Barred by the Doctrines of Conflict and Field Preemption</u>

As noted in Defendant's Motion to Dismiss, Plaintiff's negligence claims are likewise preempted by the doctrines of conflict and field preemption.   Plaintiff  avoids any discussion of these doctrines in its opposition, instead arguing that they are "not relevant."   Plaintiff argues that "Defendant must identify a specific federal statute and a specific state law that are in conflict,"   In a single sentence, Plaintiff states that defendant identifies neither, AND that Defendant references three separate acts of congress that conflict with the negligence cause of action.   (Doc. 21 at pg 6, ln. 14-15).   Indeed, Plaintiff's proposed cause of action directly conflicts with secondary theories of liability under the Copyright Act, the CDA, and the DMCA.

As described above, Plaintiff's negligence claim attempts to alter the standards for third party liability for copyright infringement.   Plaintiff's proposed standard directly conflicts with federal doctrines of secondary liability and would impose liability for copyright infringement where no presently exists.   Second, as described further below, Plaintiff's negligence cause of action conflicts with the Communications Decency Act, which provides broad immunity for causes of action that are based on the mere act of transmitting or publishing information provided by another.   Finally, Plaintiff's negligence cause of action conflicts with the DMCA and its carefully delineated  "safe harbors."

The DMCA includes various carefully crafted limitations of liability for internet service providers engaged in a wide range of intermediary and automated activities.   For example, §512(a) provides that a service provider have immunity for claims arising from "the provider's transmitting, routing, or providing connections for, material through a system or network..."   17 U.S.C. §512(a).   Similar immunities exist for system caching and information residing on

systems or networks at the direction of users (§512b & c).  Notably, however, this immunity only exends to immunity from claims for copyright infringement.   See 512(a) – (c) ("A service provider shall not be liable for monetary relief...**for infringement of copyright").**  If Plaintiff's cause of action is not based on copyright, an ISP could not claim any immunity based on the DMCA Safe Harbors.  Thus, if Plaintiff's theory is to be believed, Comcast, Google, or any other entity that currently operates   under the DMCA Safe Harbor system could be sued under a "negligence" theory for exactly those activities that the DMCA immunizes.  To put it another way, if Defendant Botson can be held liable for negligent provision of an internet connection to an alleged pirate, why couldn't Comcast be held liable for the same?  Can Google be held liable for "negligently" allowing an infringing work to appear on YouTube, though it has DMCA immunity for exactly the same act?  The answer is certainly no.  As such, Defendant's negligence theory is in direct conflict with the DMCA Safe Harbor system, and is preempted.

In addition, "Congress implicitly may indicate an intent to occupy a given field to the exclusion of state law.  Such a purpose properly may be inferred where the pervasiveness of the federal regulation precludes supplementation by the States" *Schneidewind v. ANR Pipeline Co.* 485 US 293, 300(1988).  In the instant matter, Congress has produced multiple overlapping statutory schemes dealing with the liability (or lack thereof) for third party intermediaries that merely facilitate the exchange of communications between others.  The DMCA, CDA, and Copyright Act secondary liability schemes represent comprehensive and overlapping protections for these intermediaries and both the CDA and Copyright Act include express preemption provisions.  As Congress reinforced when passing the Copyright Act, "section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5746"

In light of the foregoing and in view of the recent decision in *Tabora,* it seems readily apparent that Plaintiff's negligence claim is preempted, and must be dismissed.

**2.      Defendant Botson is Entitled to CDA Immunity**

Defendant's original brief on this issue includes a lengthy discussion on the standards for CDA immunity and their applicability to the negligence claims against Defendant.  Plaintiff's opposition does not quibble with the application of the stated elements to defendant, instead arguing only that "Defendant is ineligible for CDA §230 immunity because the Plaintiff's cause of action does not relate to the dissemination of offensive material."  (Doc. 21 at 6).  Plaintiff argues that "the CDA relates exclusively to offensive speech," (Id. at 7).  Plaintiff again cites no authority for this unsupportable proposition.  47 U.S.C. §230 applies, by its very terms, to "any information provided by another information content provider."  Moreover, although Plaintiff's counsel may not be aware of "any case where a network operator successfully invoked section 230 immunity for torts arising from the dissemination of non-offensive material," such cases certainly exist.

For example, in *Gentry v. Ebay, Inc.,* the California Court of Appeals for the 4th District confirmed EBay's entitlement to §230 immunity.   121 Cal.Rptr. 2d 703 (4th. Dist. 2002). Plaintiff's claims in *Gentry* had  absolutely no connection to "offensive speech" – Plaintiffs in fact alleged that eBay "violated California law by either failing to provide a certificate of authenticity expressly warranting the [autographed sports memorabilia] or failing to insure that such a certificate was being provided by any other party to the auction."  *Gentry*, *121 Cal.Rptr.2d at 706.*   Though Plaintiff's allegations clearly involved "non-offensive" speech, the court determined that " we additionally hold, under the facts presented, **placing liability upon eBay for failing to provide a warranty under Civil Code section 1739.7 would be inconsistent with and hence preempted by section 230**, which was incorporated by Congress into the final version of the Communications Decency Act (and the Telecommunications Act) of 1996. (See Sen.Rep.No. 104-230 (1996 2d Sess.) pp. 86-88; Pub.L.No. 104-104, § 509 (1996), 110 Stat. 56.)"  *Id.* at 712 (emphasis added).

*Doe v. MySpace* (a case cited by Defendant in its original brief) further undermines Plaintiff's argument.  In *MySpace*, the 5th Circuit upheld a grant of CDA immunity to MySpace. *MySpace* involved parents of an underage individual that sued the company based on claims that

"through postings on MySpace, Pete Solis and Julie Doe met and exchanged personal information which eventually led to an in-person meeting and the sexual assault of Julie Doe." *Doe v. MySpace,* 528 F.3d 413, 419-420 (5th Cir. 2008). The communications at issue were not "offensive," but apparently involved only the exchange of personal information which subsequently led to the parties meeting. Nonetheless, the 5th Circuit upheld the grant of CDA immunity to MySpace.

Plaintiff has not argued that Defendant fails to meet the criteria for CDA immunity, as described in Defendant's Motion to Dismiss. Instead, Plaintiff argues that Defendant is ineligible for protection because the CDA only provides liability for offensive communications. Unfortunately for Plaintiff, this distinction is explicitly contrary to the language of the statute, which grants immunity for "any information provided by another," and further contradicted by existing interpretations of CDA immunity, as illustrated by *Gentry* and *MySpace.*

## 3.    Defendant Botson Does Not Have a Legal Duty to Prevent Infringement of Plaintiff's Works.

Plaintiff's Opposition states that "Plaintiff's claim against Defendant is that he negligently operated his residential network" (Doc. 21, pg. 8), and therefore Plaintiff's claims are of active malfeasance, rather than nonfeasance. Plaintiff cites generally to "ECF No. 14" (Plaintiff's FAC) in support of this proposition, but a look at the actual allegations in that document compels a different conclusion. Indeed, Plaintiff's complaint against Defendant Botson does not include any allegation of "negligent operation". The entirety of Plaintiff's allegations are instead based on Defendant's *failure* to take actions, rather than on actions taken by Defendant. For example, paragraphs 59 and 60 state that "Defendant Botson had a duty to take reasonable steps..." , and ¶61 states that "Defendant Botson **failed to take** basic and reasonable steps...**failed to implement** any usage policy...**failure to secure** his internet connection..." and "Defendant Botson breached his duty **by failing to secure** his Internet connection..." (Doc. 14 at ¶ 59-61). See also ¶62 ("declined to monitor"), ¶ 64 ("failure to secure").

Plaintiff's opposition ignores the actual allegations in its complaint, and instead argues that its claim is that Defendant "negligently operated his residential network," and compares the "operation" of a wireless network to the "operation of a motor vehicle." (Doc. 21 at 8). This comparison is specious -  indeed one should ask who is presently operating this Court's wireless network. The answer, most certainly, is nobody.   A wireless network is solely an intermediary between end users, much more akin to a highway than the "driver" in Plaintiff's faulty analogy. Despite Plaintiff's attempts to re-characterize the nature of its claims to survive the instant motion to dismiss, Plaintiff has not alleged any affirmative acts by Defendant.   Plaintiff's allegation, fairly read, is that Defendant **failed to secure** his internet connection, thereby allowing infringement.  This allegation of nonfeasance will not support Defendant's duty, absent a special relationship.   No such special relationship exists here, and this court must therefore conclude that Defendant has no duty to protect Plaintiff from copyright infringement by another.

### III.      Conclusion

Plaintiff attempts to hold Defendant Botson liable for negligence, based on allegations that Defendant's failure to secure his internet connection enabled the subsequent infringement of Plaintiff's works by a third party.  Plaintiff's cause of action is unprecedented, and suffers from multiple "fatal flaws."  First, Plaintiff's negligence cause of action is preempted by the Copyright Act and existing theories of secondary liability.   Second, Defendant Botson is entitled to immunity under §230.  Plaintiff's does not dispute that Defendant Botson satisfies the criteria for CDA immunity as outlined in his Motion to Dismiss.  Instead, Plaintiff argues that CDA immunity is limited to "offensive speech."   Plaintiff's argument is directly contrary to the explicit language of the CDA and existing case law, and must be rejected.  Finally, Plaintiff's complaint must be dismissed because Defendant does not have a duty to protect Plaintiffs from copyright infringement.  Indeed, "The only possible basis for a duty to protect another from copyright infringement – if such a duty can exist – is in copyright law." *Watermark Publishers v. High Tech. Sys.,* 1997 U.S. Dist. LEXIS 22512 at * 15 (S.D. Cal. Jun 18, 1997).

July 23, 2012

Respectfully Submitted,

__/S/ Nicholas Ranallo_____
Attorney for Defendant Botson
Nicholas Ranallo, Attorney at Law (SBN 275016)
371 Dogwood Way,
Boulder Creek, CA 95006
(831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of July, 2012, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

      By:____/s/Nicholas Ranallo
      Nicholas Ranallo

## TABLE OF CONTENTS

**Introduction**...........................…………………………………….....................……1

**Argument**..........................................................................................................3

    1. Plaintiff's Negligence Claims Are Preempted............................................................3

    2. Defendant is Entitled to CDA Immunity...................................................................8

    3. Defendant Does Not Have a Legal Duty to Prevent Infringement of Plaintiff's Works.............................................................................................................................9

**Conclusion**.........................................................................................................10

## TABLE OF AUTHORITIES

**CASES**

*Cable/Home Communication Corp.,* 902 F.2d at 846 (11th Cir. 1990)..........................................6

*Doe v. MySpace,* 528 F.3d 413, 419-420 (5th Cir. 2008)............................................................9

*Ehat v. Tanner,* 780 F.2d 876, 878 (10th Cir. 1985)..................................................................5

*Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir.1996)....................................5

*Gentry v. Ebay, Inc,* 121 Cal.Rptr. 2d 703 (4th. Dist. 2002)......................................................8

*Gershwin Publ'g Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971)........5

*Kodadek v. MTV Networks, Inc,* 152 F.3d 1209, 1212 (9th Cir. 1998).......................................3

*Liberty Media v. Felix Latimore, et. al. ,* No. 11-cv-00040 (S.D. Cal. July 11, 2011)............................2

*Liberty Media Holdings, LLC v. Tabora & Whetstone,* 1:12-cv-02234-LAK (S.D.N.Y. July 9, 2012)....1, 2, 4

*Ryan v. Editions Limited West,* 2011 WL 730491 (9th Cir. 2011)............................................5

*Schneidewind v. ANR Pipeline Co.* 485 US 293, 300(1988)........................................................7

*Sega Enter. Ltd. v. MAPHIA,* 948 F.Supp. 923, 933 (N.D.Cal.1996)........................................6

*U.S. ex rel Berge v. Bd. Of Trustees of Univ. of Ala.,* 104 F.3d 1453, 1463 (4th Cir. 1997)......................5

*Watermark Publishers v. High Tech. Sys.,*

1997 U.S. Dist. LEXIS 22512 at * 15 (S.D. Cal. Jun 18, 1997)……………………….............….............10

**STATUTES**

17 U.S.C. §512....................................................................................................................6-7

47 U.S.C. §230....................................................................................................................8-9

**LEGISLATIVE MATERIALS**

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659….......7,8,9